## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL SALSMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 03-cv-0140-MJR |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

**REAGAN, District Judge:**

Now before the Court is Defendant United States of America's motion to dismiss Plaintiff Michael Salsman's third amended complaint (Doc. 53) and memorandum in support (Doc. 57). Salsman brought this suit pursuant to the Federal Tort Claims Act, **28 U.S.C. 1346(b), 2671-2680**, alleging that the United States was negligent in treating a sinus infection which caused blindness to Salsman's right eye while he was a federal inmate at the Federal Correctional Institution (hereinafter "FCI") in Greenville, Illinois, in 1999. The United States argues that Salsman's third amended complaint should be dismissed as: (1) Salsman failed to exhaust his administrative remedies; (2) Salsman failed to file the requisite medical professional affidavit stating that the case has merit; (3) Salsman failed to timely serve the United States without good cause or excusable neglect; and (4) this Court lacks subject matter jurisdiction. Salsman responded in opposition at Doc. 58, to which the United States replied at Doc. 59. The Court will begin its analysis with a brief recitation of the key facts and procedural history.

### Factual Background and Procedural History

Salsman was an inmate at the FCI in Greenville, Illinois, in December 1999. In early

December 1999, Salsman became ill with a sinus infection and his symptoms grew increasingly worse over the month. Salsman alleges that during this time, the United States Bureau of Prisons (hereinafter "BOP") continually denied him medical treatment which caused his symptoms to become progressively worse. As the infection progressed, Salsman states that it began to affect his right eye. Salsman further states that he was periodically treated and monitored by physicians to determine whether his eye showed any improvement.

On December 20, 1999, Salsman was transferred to St. Louis University Hospital where he underwent surgery to relieve his symptoms. Salsman had sustained severe damage to his optical nerve resulting in blindness to his right eye. He was discharged from St. Louis University Hospital on December 25, 1999, and sent back to FCI. Salsman had a follow-up visit with a physician on December 29, 1999 where he learned that the injury to his right eye was irreversible and that the would never regain sight in his right eye. Salsman alleges it was at this follow-up visit that he became aware of the nature and extent of his injury when he learned that his blindness in his right eye was irreversible. Salsman alleges that while at St. Louis University Hospital he was not aware of the permanent nature of his injury.

Salsman then filed an administrative claim for personal injury on December 20, 2001 through his attorney who signed a Standard Form 95 on December 20, 2001 and sent it to the BOP by facsimile that same day. *See* Doc. 51, Exh. A and B. Salsman was notified on January 3, 2002 that his Standard Form 95 was incomplete as it did not have either an original signature by Salsman or evidence that Salsman's attorney, whose signature was on the form, had authorization to act on Salsman's behalf. As a result, Salsman resubmitted the claim with the proper signatures, which was received by the BOP on January 17, 2002. The BOP later denied it on August 29, 2002. Salsman then filed his original complaint in this Court on February 23, 2003. Salsman later amended his

complaints three times, resulting in the current-operating third amended complaint (Doc. 51).

Thereafter, the United States brought its motion to dismiss arguing that this matter should be dismissed as: (1) Salsman failed to timely file an administrative claim with the BOP pursuant to **28 U.S.C. 2401(b)**; (2) Salsman failed to file the requisite affidavit and report from a medical professional indicating that the case has merit pursuant to **735 ILCS 5/2-622**; (3) Salsman failed to serve the United States within 120 days of filing the complaint pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 4(m)** and cannot show good cause or excusable neglect for his failure to do so; and (4) this Court has no jurisdiction over this matter pursuant to **28 U.S.C. 1331** in a suit against the United States.  The Court will address each argument in turn.

## Standard Governing a Motion to Dismiss

The purpose of a motion to dismiss under **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** is to "test the sufficiency of the complaint, not to decide the merits" of the case. ***Triad Associates, Inc. v. Chicago Housing Auth.***, **892 F.2d 583, 586 (7th Cir. 1989)**.  When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all well-pled factual allegations and resolves in the plaintiff's favor all reasonable inferences.  ***Echevarria v. Chicago Title & Trust Co.***, **256 F.3d 623, 625 (7th Cir. 2001)**, *citing Transit Express, Inc. v. Ettinger*, **246 F.3d 1018, 1023 (7th Cir. 2001)**.

Dismissal for failure to state a claim is proper only if the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  ***Alper v. Altheimer & Gray***, **257 F.3d 680, 684 (7th Cir. 2001)**, *citing Conley v. Gibson*, **355 U.S. 41, 45-46 (1957)**, *and Veazey v. Communications & Cable of Chicago, Inc.*, **194 F.3d 850, 854 (7th Cir. 1999)**.  *Accord Galdikas v. Fagan*, **342 F.3d 684, 686 (7th Cir. 2003)("Dismissal is proper if it appears beyond doubt**

that the plaintiffs cannot prove any set of facts entitling them to relief.").

<u>Analysis</u>

**1. Whether Salsman failed to timely exhaust his administrative remedies.**

The United States argues that Salsman failed to exhaust his administrative remedies as he filed a claim with the BOP more than two years after his cause of action accrued. "A tort claim against the United States shall be forever barred unless it is presented ... within two years after such claim accrues." **28 U.S.C. 2401(b).** If Salsman failed to file a proper administrative claim within two years of the accrual of the cause of action, the district court cannot entertain the plaintiff's FTCA suit. ***Sullivan v United States*, 21 F.3d 198, 206 (7th Cir. 1994).** The United States Court of Appeals for the Seventh Circuit has determined that to constitute a claim under the FTCA, the claim must include four things: (1) notification of the incident; (2) a demand for a certain sum; (3) the title or capacity of the person signing; and (4) evidence of this person's authority to represent the claimant. ***Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997).**

The United States argues that as Salsman's Standard Form 95 that was received on December 20, 2001 did not include evidence of his attorney's authority to file the claim on Salsman's behalf, nor Salsman's own signature, it violated the fourth requirement of the Seventh Circuit's test for a claim. Accordingly, the United States argues that Salsman's second claim that was received by the BOP on January 17, 2002 is the one that matters for purposes of the statute of limitations, and it was filed beyond the two year statute of limitation, irregardless of whether Salsman's cause of action accrual date is December 20, 1999 or December 29, 1999.

In response, Salsman argues that his December 20, 2001 Standard Form 95 gave notice of his claims and demanded a certain amount of relief, sufficient enough to satisfy his administrative remedies. Salsman cites to the Seventh Circuit's decision in ***Kanar*, 118 F.3d 527**

-4-

**(7th Cir. 1984)**.  In that matter, the FTCA plaintiff's suit was dismissed for failure to exhaust administrative remedies as the claim he filed did not have the proper signature, and upon being notified that the proper signature was needed, the plaintiff took nine months to comply.  *Id.* **at 531.** The Seventh Circuit stated that if the plaintiff had "promptly submitted what the agency called for, we would be inclined to treat his original papers as close enough to a 'claim' to count." *Id.*  As a result, Salsman argues that because he promptly responded to the request for the requisite signature, his original claim should be treated as "close enough" to a claim to count.   This Court agrees.

The Seventh Circuit's opinion in *Kanar* clearly dictates that this Court should find that Salsman's December 20, 2001 Standard Form 95 is a proper administrative claim.  Salsman was notified on January 3, 2002 that his Standard Form 95 was incomplete because it did not have either an original signature by Salsman or evidence that Salsman's attorney had authorization to act on Salsman's behalf.  Salsman promptly resubmitted the form with the proper signatures, which was received by the BOP on January 17, 2002.  Thus, only two weeks transpired from the time that Salsman was notified of the error to the time that the BOP received the corrected version.  Therefore, the case at bar is clearly the type of scenario the Seventh Circuit envisioned in *Kanar*.  Salsman acted quickly to rectify the omission from his form and the omission turned out to be a harmless error as the agency was able to proceed on his claim.  Therefore, the Court finds that Salsman's December 20, 2001 claim constitutes as a proper administrative claim.

As the Court has found that Salsman's December 20, 2001 claim constitutes a proper administrative claim, the Court now must decide when Salsman's cause of action accrued in order to determine whether Salsman filed his administrative claim within the two-year statute of limitation period.  Salsman argues that his Standard Form 95 was timely as his claim accrued on or after December 29, 1999 when Salsman was first informed by medical officials of the nature and extent

of his injuries.  It is unclear from the United States' pleadings as to what date they allege Salsman's claim accrued on.  Regardless, the Court finds that his claim accrued no earlier than on December 20, 1999, the date of his surgery at St. Louis University Hospital.

This Court finds the Seventh Circuit's decision in **Green v. United States, 765 F.2d 105 (7th Cir. 1985)** controlling on the case at bar.  In *Green*, the plaintiff had been receiving radiation therapy at VA hospitals for oral cancer.  *Id.* **at 108-09.**  One day after having completed treatment at the VA hospitals, the plaintiff was admitted to Cook County Hospital hemorrhaging from the mouth, and underwent several operations.  *Id.*  He was released in July 1980 and then admitted to the hospital again in August 1980, where he underwent another five surgical procedures and was diagnosed with osteoradionecrosis, death of bone tissue resulting from excessive exposure to x-rays or radium, caused by his radiation therapy.  *Id.*  The Seventh Circuit found that the plaintiff's FTCA claim accrued when he was told that his injuries were caused by his radiation therapy.  *Id.* **at 108.**  Further, the Seventh Circuit stated that in failure to treat cases, "the injury is not the mere undetected existence of the medical problem, but rather, is 'the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment."  *Id.* **at 108-09.**

Applying the Seventh Circuit's standard to Salsman's allegations of the BOP's failure to treat his complaints, the Court finds that Salsman's cause of action for purposes of **28 U.S.C. 2401(b)** did not accrue any earlier than December 20, 1999, when Salsman underwent surgery for his condition, and even more likely so, did not accrue until he had a follow-up visit with his physician on December 29, 1999.  It was not until December 29, 1999 that Salsman knew of the extent of his injury and its probable cause.  Regardless, as Salsman filed his claim on December 20,

2001, he filed his administrative claim within two years of the earliest possible accrual date and within the statute of limitations for FTCA claims.

**2.   Whether Salsman failed to file the requisite affidavit and report from a medical professional indicating that the case has merit pursuant to 735 ILCS 5/2-622.**

The United States argues in the alternative that Salsman's suit should be dismissed for failure to comply with **735 ILCS 5/2-622**.  Section 2-622 provides, in part, "[i]n any action, whether in tort, contract, or otherwise, in which plaintiff seeks damages for injuries or death by reason of medical malpractice, hospital, or other healing art malpractice ... [the plaintiff] shall file an affidavit" from a medical professional indicating that the case has merit.  Failure to file an affidavit pursuant to Section 2-622 is cause for dismissal under **735 ILCS 5/2-619** pursuant to **735 ILCS 5/2-622**. Salsman argues in response that: (1) Section 2-622 is not applicable to the case at bar as his claim is not a medical malpractice claim, but a failure to treat claim, which is sounded in ordinary negligence, and (2) Section 2-622 is a state procedural rule and is inapplicable in federal cases involving medical malpractice.  The Court will first address Salsman's second argument.

FTCA claims are governed by the substantive law of the state in which the alleged tort occurred.  ***See* 27 U.S.C. 1346(b), 2674;** *see also Murrey v. United States*, **73 F.3d 1448, 1453 (7th Cir. 1996).**  Thus, the Court must decide whether Section 2-622's filing requirement is a substantive law of Illinois, where Salsman pleads his alleged tort occurred.

While the United States Court of Appeals for the Seventh Circuit has not directly decided the issue with regard to actions arising under federal question, the Seventh Circuit has implicitly held that Section 2-622's requirement does apply to actions brought in federal court under diversity jurisdiction.  ***See Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000)(applying 2-622 filing requirement in medical malpractice claim brought under diversity jurisdiction).**

Importantly, in both diversity cases and FTCA cases, state substantive law is applied while federal procedural law is applied.  Therefore, for diversity cases, the Section 2-622 requirement must be considered substantive law.  And as FTCA cases and diversity cases use the same rule, it seems likely that the Seventh Circuit would find that Section 2-622's filing requirement is applicable to FTCA actions as well.

Further, the Court notes that the Seventh Circuit has stated that when "a rule [is] limited to a particular area of law and motivated by concerns about the potential impact on primary behavior of making it too easy for plaintiffs to win a particular case," then the rule is "almost certainly" substantive law.  ***Murrey*, 73 F.3d at 1456.**  Section 2-662's filing requirement is limited solely to medical malpractice matters and is intended to minimize frivolous malpractice suits by requiring a showing that "there is a meritorious cause for the filing of such action."  ***Sherrod*, 223 F.3d at 613.**  Accordingly, the Court finds that Section 2-622's filing requirement is an Illinois substantive law.

The next issue for the Court to decide is whether Section 2-662's filing requirement is applicable to the case at bar as Salsman asserts this matter is not a medical malpractice action. Instead, Salsman asserts that he simply alleges ordinary negligence.  However, the Court disagrees and finds that Salsman's claims are medical malpractice claims.

When deciding whether a complaint is one for malpractice requiring a Section 2-622 affidavit or, is one for ordinary negligence, courts apply the following factors: (1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror; (2) whether the activity is inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish the plaintiff's case. ***Jackson v. Chicago Classic Janitorial & Cleaning Service, Inc.*, 823 N.E.2d 1055, 1058 (Ill. App. Ct. 2005).**  Courts are to keep in mind that the term "medical,

hospital or other healing art malpractice" in Section 2-622 must be construed broadly.  ***Id.*, *citing Woodard v. Krans.*, 234 Ill.App.3d 690, 703 (1992).**  As well, "malpractice" is defined as "[f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury to the recipient of those services." ***Id.* at 1059.**

As to the first factor, "where determining the standard of care requires applying distinctively medical knowledge or principles, however basic, the plaintiff must comply with section 2-622." ***Id.*, *citing Woodard*, 234 Ill.App.3d at 705-06.**   In the case at bar, the Court cannot overlook that in Salsman's complaint Salsman specifically pleads that "Defendant United States of America ... was negligent in the *diagnosis* and treatment of Plaintiff's illness."   Doc. 51, p. 3 (emphasis added).  Salsman puts his diagnosis at issue, which directly involves the substance of his medical treatment which the Court finds is not something usually within the grasp of the average lay juror, suggesting that this matter is a medical malpractice action.

Likewise, the second factor of whether the activity is one of medical judgment, also implicates that this is a medical malpractice matter.  Salsman is claiming that there was negligence in failing to treat his infection and in the diagnosis of his infection, which this Court believes inherently involves medical judgment.  In ***Lyon v. Hasbro Industries*, 509 N.E.2d 702 (Ill. App. Ct. 1987)**, the Illinois Appellate Court for the Fourth District found that the determination of what equipment is necessary and precautionary to meet the needs of transporting a child to a hospital in an ambulance is one of inherently medical judgment.  ***Id.* at 708.**  Comparing the *Lyon* case to the case at bar, *Lyon* merely involved the transportation of a patient while this case involves the diagnosis of Salsman's infection, such that the Court does not see how it cannot find that Salsman's

claims involve medical judgment so that this matter is a medical malpractice case.  Diagnosing a patient is inherently a function of a person's medical judgment.

The third factor involves the evidence that will be necessary to establish the standard of care.  "Generally, in a medical malpractice case, [a] plaintiff must offer expert testimony to establish the standard of care unless defendant's conduct is so grossly negligent or the treatment so common that a lay person could readily understand it."  ***Kolanowski v. Illinois Valley Community Hospital*, 544 N.E.2d 821, 824 (Ill. App. Ct. 1987).**  However, if the standard may be established on the basis of defendant's administrative policies or other evidence short of medical expert testimony, plaintiff will be permitted to proceed with his suit on a theory of ordinary negligence.  ***Id.* at 824.**

In the *Kolanowski* case, the court gave an example of an action based on a slip and fall injury allegedly resulting from the defendant hospital's negligent failure to remove or warn of water on the floor.  The court found that action was one of ordinary premises liability rather than medical malpractice.  ***Id.***  In the case at bar, Salsman's allegations concern the manner in which the United States originally diagnosed and failed to treat his infection.  Accordingly, the Court finds that it is likely that the evidence necessary to prove the allegations of the complaint is "beyond the ken of the average juror and as such will require expert testimony."  ***Jackson*, 823 N.E.2d at 1060.**

After reviewing the facts of this case and the factors applied by courts to determine whether a matter involves ordinary negligence or medical malpractice under Illinois law, the Court finds that Salsman's allegations fall within the term "malpractice" and Section 2-622.  Therefore, it was necessary for Salsman to provide a physician's affidavit stating that a meritorious cause of action existed under the facts of this case.

Under Illinois law, if Section 2-622's filing requirement has not been satisfied,

dismissal is mandatory, but courts have discretion to dismiss with or without leave to amend. ***Sherrod***, **223 F.3d at 613.**   In the case at bar, Salsman originally filed his complaint on February 28, 2003 without the Section 2-622 affidavit.  He was then granted leave to amend his complaint and filed an amended complaint on May 18, 2004, again without the Section 2-622 affidavit.  The United States then filed a motion to dismiss the amended complaint on June 1, 2004, arguing, among other things, that Salsman failed to file the requisite affidavit pursuant to Section 2-622.  Salsman then moved for leave to file a second amended complaint to cure the deficiencies raised in the United States' June 1, 2005 motion to dismiss, and was granted leave to do so.  Salsman filed his second amended complaint on November 14, 2004, again without the Section 2-622 affidavit.  Before the United States could answer or otherwise respond to the second amended complaint, this Court set an in-court status conference in this matter for December 13, 2004 as trial was set to begin on December 6, 2004, and the second amended complaint was just filed two weeks before the trial date.

        At the status conference, the United States raised several deficiencies that still existed in the second amended complaint, including the lack of a Section 2-622 affidavit.  Salsman's counsel advised the Court that he would file a third amended complaint to cure the deficiencies. Accordingly, the Court directed Salsman to file a third amended complaint, which he did on January 5, 2005, however, again, without the Section 2-622 affidavit.  As Salsman has had four chances to file a complaint that complies with Section 2-622 and was aware if the United States' objection to the lack of a Section 2-622 affidavit since June 1, 2004, the Court finds that leave to amend is not warranted in this matter.  Accordingly, the Court exercises its discretion to dismiss this matter without prejudice for failure to comply with Section 2-622.  As the Court is dismissing this matter without prejudice for failure to comply with Section 2-622, the Court need not address the United States' remaining arguments in support of dismissal.

## Conclusion

The Court hereby **GRANTS** Defendant United States of America's motion to dismiss Plaintiff Michael Salsman's third amended complaint (Doc. 53).  The Court hereby **DISMISSES** *without prejudice* this matter.  This case is now **CLOSED**.

**IT IS SO ORDERED.**

**DATED this 19TH  day of August, 2005.**

**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**

-12-